Thank you, Mr. Clerk. Good afternoon. Please be seated. First case this afternoon is case number 4160028, Country Preferred Insurance Company v. Lori Groen for the appellate, Gregory and Benjamin Skro. And as I understand it, Gregory will be doing the argument. And for the appellate, Keith Carlson. Before we begin with the argument that Justice Appleton could not be here today, he's the third member of the panel. He has read the briefs, he'll listen to the audio recording, and will fully participate in the decision that this Court ultimately reaches. Having said that, please proceed. May it please the Court. Justices, there are three things I want to be sure to cover today. First, the Fifth District decided a case since we filed our briefs. De Stefano, it has bearing. Second, the language of the exclusion is ambiguous regarding its application to medical benefits if for no reason other than the term present value. Third, workers' compensation laws have no longer liable for medical bills since every case we've considered in our briefs was decided. Let's begin by talking about the actual language of the policy. Coverage will be reduced by the present value of all amounts paid or payable under workers' compensation. What does that term, present value, mean? It means just what you think it means. I looked up the definition. The value of an expected income stream determined as of the date of valuation. Another definition, the current worth of a stream of cash flow. There's even a formula. While I won't demonstrate the formula here, it's a way of valuing an income stream like Lori Grohn's weekly workers' compensation benefit. That provision has two sentences and is used again in the second sentence when we talk about Social Security disability benefits. So what do workers' compensation disability benefits and Social Security disability benefits have in common? They're an income stream. Nowhere in that language is there mention of medical bills. Nowhere in that language does it say medical benefits. Or even as the word goes, nowhere does it say amounts payable for the insured. Co says for the insured. Co doesn't just say payable. It says payable for. You could argue that a medical bill was paid for the insured, especially before the 2006 change. But this present value means income stream. Just as I would postulate that the only reading of that language that doesn't render the use of the words present value superfluous twice is to see that it applies to an income stream. Let's talk about applying this exclusion to the medical bills though. Under the workers' compensation laws that exist today. Not as it existed when SULSR and Ullman and Co were decided. When I first started practicing law, there was a term commonly used among workers' compensation practitioners. And that term was balance billing. And balance providers billed workers' comp insurance and then billed the injured worker for the balance of the bill. This was a big problem because these people were off work. They didn't have the money to pay the bills. And for anyone who represented them, we had small claim suits to defend, credit bureaus to talk to. So when the legislature finally took up workers' compensation reform, this was one of the things they addressed. Another one of the things they addressed was to make sure that medical providers would be paid and would be paid in a predictable amount. Of course, we understand that virtually everything they do across the street is a compromise or a balance. Something for the injured worker, something for the doctors. And frankly, most doctors don't take very kindly to being told how much they can charge for procedures. So what the doctors got, the other side of balance billing, was this predictable medical fee schedule which came with the promise, you will be paid. A statute was passed, Section 8.2, effective February 1, 2006, which says that workers' compensation medical bills are owed by the employer, not the employee. Here are three quotes. The provider shall bill the employer directly. The employer shall make payment. A provider shall not hold an employee liable. When I say those bills are owed by the employer, I'm not exaggerating or overstating. If a provider sues an injured worker for a balance bill, it's an affirmative defense. You say, look at this statute. I don't owe it. When you agree to accept a workers' compensation patient, you agree to the fee schedule. Doctors are not compelled to accept the patient, but when they do under the law, the patient doesn't owe the money. It seems your argument suggests, however, there's no benefit to the employee. And if we were only looking at the benefit to the employee, that would be a more difficult proposition. But the policy exclusion speaks of the present value of the benefit. And that, to me, renders it ambiguous as to whether, and we know this is at least 25 years old because it's the same language as Salser, whether when this was drafted, they were talking about the present value of workers' compensation benefits. Whether they were saying, we're going to offset your income stream. I think that's the right thing to say. Why wouldn't it be logical to say it refers to the present value of the income stream and also the medical benefits that are paid on behalf of the employee? If it said that, I wouldn't be here. If it said and medical benefits. Justice, if I said to you, what was the present value of what you paid for lunch today, you'd think I didn't know what that term meant. Those medical bills were never owed by Lori Grone. Those medical bills were owed by Drake Nareff and me, her employer, by statute. They went out and bought a policy of insurance from Cincinnati that indemnifies, holds them harmless, insures them against their oblige. Lori Grone bought a whole different policy of insurance that had to do with her car. It had nothing to do with her job. And the country wants to set off its obligation against the obligation of Drake Nareff and me. And I think it's very important now that we look at the DeStefano case because this is the distinction they make. If you don't have the site, it's DeStefano versus Farmers Insurance, 2016, bill at 15325. That was the only site I could get so far. And it was the fifth district filed June 14, 2016. And the fact pattern was that a young woman was struck by a rural letter carrier with policy limits of $25,000. She herself had underinsured limits of $100,000. The primary carrier paid $25,000. The United States government paid $49,000. And the court held that Ms. DeStefano recovers $75,000 because the United States government was discharging its own liability. They were not discharging the liability of the uninsured motorist. What's the comparable language to this policy in that fifth district case? How does it read? Let me tell you exactly. I hope that yellow tab is right where the language is. Let's see. I apologize. I have the case ready and I thought I had the exact language ready. Believe it or not, it is not cited. It is not cited in my opinion, Your Honor. Can you restate what is the importance of that case to our decision in this case? The United States government was discharging its own liability when it paid the $49,000. It was not discharging the liability of the uninsured motorist, just as in Hogland decided by the Supreme Court where an uninsured motorcycle had a passenger on it, was hit by a letter from a liable party. The liable party paid their limits. The passenger proceeded against the underinsured under her own uninsurance for the liability of the uninsured motorcycle and recovered because that's different liability than the liability of the uninsured motorist. Drake, Narrabin, Mead was discharging its own liability. They weren't discharging the liability of the uninsured motorist. Well, excluding the words present value, if you just take the words all amounts paid under any workers' compensation law, are you saying that the medical benefits here do not fall under that provision? No, Justice. I am not. I think that that is something of a settled issue. I'm saying you can't divorce the words present value from this exclusion. Okay. I understand that. But then I don't understand the relevance of the Fifth District case. If you don't have the policy language, how are you making an apples-to-apples comparison between that case and this case where you're saying on the facts of this case, given the language of the policy here, present value of, if you don't know what the Fifth District case pertained to in terms of that policy language, how is it of any benefit to you here? My proposition is that Cincinnati Insurance was not discharging the liability of an uninsured motorist. They were not discharging the liability of Lori Groen by statute. They were discharging the liability of Drake, Narrabin, Mead only. And that should not be offset against uninsured motorist coverage purchased by Lori Groen. And that is consistent with Hoglund, and it is consistent with DeStefano. It's third-party liability. It's not the liability of the uninsured motorist. It's not the liability of Lori Groen. If Lori Groen had been hit by a fully insured vehicle, had received $250,000, she'd have $75,000 in her pocket right now. Sure, Cincinnati would have gotten some money, but she'd have $75,000. And under this interpretation, she gets zero, nothing. And that goes to this whole idea of what can you offset against uninsured motorist benefits. You can offset uninsured motorist liability only. I think there are really two things going on here that I'm arguing to you. One is that language is bad. It needs to be fixed. Somebody needs to put medical bills in there. And that will solve that problem, at least for the time being. The other is, now that the law has changed and Lori Groen never owed those bills, how do you offset that against coverage she purchased? It's not her liability. It's a third-party liability. So, in summary, by using the term present value, I think this exclusion means the income stream. Lori Groen's receiving $300 a week. It's been three years and a week. So she's gotten about $50,000. That's what she has received. She didn't receive any medical bills. She hasn't put anything in her pocket except an income stream. Just like the Social Security. Just like the present value of Social Security. She's not receiving anything. Those medical bills have to be paid by statute on behalf of the insured. And I kind of lost track of saying this, but the Stefano opinion uses that term repeatedly. On behalf of who was the money paid on behalf of? And they say it was paid on behalf of the United States government. It wasn't paid on behalf of the rural letter carrier who was underinsured. It was paid on behalf of the United States government, who is alleged to have been liable as well. Just as the uninsured motorcycle driver in Hogland was uninsured. It was paid on behalf of the other driver, not on behalf of the uninsured motorist. So I would ask you to find the language ambiguous, to find that present value means an income stream, and to find that because those bills weren't paid on behalf of Lori Grone, they're not a proper offset against uninsured motorist coverage she purchased. Okay, thank you, Counselor. You will have rebuttal. Mr. Carlson. As we set forth in our briefs, I think, where we have basically unopposed Illinois law stretching back over 25 years from the Illinois Supreme Court, interpreting the identical language, finding it enforceable, not against public policy, not ambiguous. I'll address the arguments made by Counsel. You talked about the Sulsur case, and the Court talked about Sulsur being the same language. There is actually a little different in Sulsur than the current country language. In Sulsur, it said the present value of all amounts payable under any workers' compensation, disability benefits, or similar law. In the country policy, it says the amounts payable will be reduced by the present value of all amounts paid or payable under any workers' compensation, disability benefits, or any similar law. The medical bills here were paid pursuant to a workers' compensation law. They were paid under that law. By being paid under the law, by the language, they reduced the amounts. It's undisputed that over 400,000 of bills were paid as of in the past, and 13,000 additional benefits were paid. Present value, of course, means obviously money today is worth more than money in the future. So normally in a case, many times there's a resolution of the case, but Social Security or workers' compensation payments might be paid into the future, so you would have to calculate what is today the present value of that future income stream, which would only increase the amount of the set-off. As it relates to medical payments having been paid, how do the words present value modify? It doesn't modify at all because they've already been paid, so that means they've been paid in the past. If you had to pay $400,000 now in medical bills versus having to pay the $400,000 10 years in the future, the present value is different. Because you have that income stream, you would have that deferred for 10 years. So it could only increase. The present value, if you're going to get a payment in 10 years of Social Security of $2,500 and you take it earlier at $62,000 or $65,000, you get a lesser amount because the money received today is worth more than receiving it 5 years from now. It doesn't make any sense for the policy to refer to present value if it's referencing medical payments because that doesn't make sense. The present value of medical payments that have already been paid, what does that mean? Why wouldn't they just say the amounts paid and the present value of any amounts to be paid? Well, the present value is determined on the time period into the future. So if there's no time period, present value and if you paid $1 today, the amount you paid would be $1 and the present value would be $1. If you paid it tomorrow, it would be maybe $0.99 value as of today if you only had to pay it tomorrow. So the present value we can determine by time. Time is the difference in present value. I understand that, but for medical benefits that have already been paid, present value doesn't have any particular meaning, does it? Yes, it does because the present value is that value of what's been paid. It doesn't get less or more, so it can't change. The present value, if you paid $1 two weeks ago, the present value is actually more. It's $1. You've already paid it. The fact is they're taking in how you calculate benefits that you're going to additionally get in the future. And that's why it says any amounts paid under the law. It says the present value of all amounts paid or paid of both under the law. So how else can you determine what's going to be owed? Unless you use the word present value, you can't determine what's going to be owed in 15 years from now. I was just going to say, again, you're talking about future payments to be made. Mr. Scruggs is talking about medical payments that have previously been paid, and the words present value are out of place. They're meaningless when you are referring to an amount that previously has been paid. If $10,000 worth of medical payments were paid last year, talking about the present value of the $10,000 worth of medical benefits that was paid last year would be still $10,000, right? It would be the same amount. If it's paid in the future, it's a different figure to calculate. So present value includes the amount paid. He didn't articulate this in his brief and provide any real arguments on this issue. Your point is, you're not necessarily saying this was written in the best way possible. It doesn't make it ambiguous by using the words present value, even if it's meant to modify the term medical benefits paid. That would be a ridiculous interpretation. Every time you have to bring an economist in to figure out what the present value of a future surgery is, and bring in doctors and say, it's only going to apply to the surgery she might have in the future and the present values of those surgeries. We need to get some doctors in and economists and figure out she's going to need a hip replacement in 10 years from now, and that will cost $175,000 10 years from now. And the economist says, well, the present value of that $175,000 surgery today is $100,000. That's absurd. That would be an absurd interpretation of this language to say that that's what it meant in my argument. And that's why I know we're all lawyers, and that's your job to come up with creative arguments to advance your position. And, of course, I'm representing insurance companies. I've heard the word ambiguous every day of my life. Why would it be absurd to say that present value refers to future medicals? You're saying that would be absurd? It would be absurd because it would make it so complicated and difficult in every case to determine that. What would be the distinction between having a reduction only for what's been paid and what might be paid in the future? Why would that make a difference? Right now, the employer or the insurer has a right to recover what they're paid now from the tortfeasor. If your interpretation was accepted, then someone with this kind of language and an uninsured driver would recover more than someone with the same limits. If the tortfeasor had $250,000, they would recover more under his interpretation, contrary to the Supreme Court's statements that you're supposed to be put in the same position. Just like if this tortfeasor said if they had $250,000, she would have paid an uninsured motorist premium, but she would have received nothing from country because the tortfeasor would have identical limits. If she was just crossing the street on shopping instead of during her work hours, she would have gotten no workers' compensation benefits. She would have gotten hit by an uninsured driver. Her recovery would have been capped at $250,000 for medicals and everything. And she would be liable for over $400,000 of her own. Her employer wouldn't have had to pay that sum. So she'd be in worse shape. That just shows you there's many different factual situations, and we're interpreting contracts, which have been interpreted many times in the past. And it gets back to all the cases that say when the legislature looks at what are we trying to do, we're trying to make the person the same. If they were uninsured or insured of the same limits, we're looking to put them in the same position they would be in either circumstance. Because the employer, again, or the insurer, for all those medical payments, if she had a tortfeasor that $250,000, that insurer or employer could recover that $250,000 from her recovery from the tortfeasor. She would not get any additional money. They have a right to subrogation for all the money they paid. And that's why they're saying she's not in any worse position, because if there was a tortfeasor, she'd get no additional money. And here she's going to get, under these facts, she's going to get no additional money than the benefits she continues to receive and over $400,000 of medical bills that have already been paid on her behalf under the workers' compensation law. And I think some of the cases, and I've cited in the briefs in the past, have had a language of present value. But, and again, it's an argument, I think, is weighed by not being made below. Or like some of the arguments here that are not supported by any authority other than citing certain cases for general propositions of law, like a contract can be ambiguous. And I don't know, the Stefano case, I haven't read it. I'm a little, obviously, at a loss to respond to it since I haven't read it. It was supposedly issued in June. I believe, I might have even seen it, I believe it might have involved two tortfeasors as opposed to one tortfeasor. But I'm not sure if the court's going to consider that case. I would maybe elicit the opportunity to respond in writing to that case that I have, counsel has not provided me yet or cited to the court or filed a motion. But I think the trial court was correct in following the consistent Illinois law. The same over the years, they've talked about the legislature, why the legislature, when they reenacted the uninsured motor statutes and work comp, they haven't changed this result, although they're aware of it, obviously, because this is longstanding law under the same policies and it fits their purpose. The result in this case fits the purpose that supreme and appellate courts have identified in both the work compensation and the uninsured motorist laws of this state. And here, she's not receiving any bit less than if she was insured with a tortfeasor with $250,000. And it's consistent with the language of the contract and the purpose of Illinois law and respectfully ask that the court affirm the lower court. Any other questions? I see none, so thank you very much. Is there any rebuttal? Very briefly, Justice. Thank you. I would like to point out that the Sulcer case stated in its very outset that the sole issue they were determining was whether an exclusion like this is contrary to public policy. Sulcer did not interpret the language of the exclusion. Second, I would like to address this whole issue about Lori Grone being better or worse off. If she hadn't been working, it would have been $250,000. She would have paid 40% under the medical lien statute, 30% under the attorney's fees statute, if she had attorney's fees, and she would have had $75,000 left over. But she was working, and that's really what we should look at. So she gets $250,000. Any motorist who had $250,000 in insurance would have said, here you go, here's $250,000 to Lori Grone. She would have kept 25%. She would have kept $62,500. That's how she's worse off. And I would like to finally say interpreting this language is a question of first impression. Okay, thanks to both of you. The case is submitted, and the court will stand in recess.